## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL CARS LTD, INC. and DANVERS ICL 1, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| ERIC THORNER; JASON BLACK; THE BEST DAMN LOCATOR, LLC; BEST AUTO FINDERS; and SUPREME LOCATORS, LLC, | ) ) ) ) ) |
| Defendants. | ) ) ) |

No. 1:23-cv-11932-JEK

## <u>MEMORANDUM AND ORDER ON</u>
## <u>DEFENDANT JASON BLACK'S MOTION TO DISMISS</u>

**KOBICK, J.**

Plaintiffs Danvers ICL 1, doing business as Honda North, and International Cars LTD, Inc. allege that their former employee, defendant Eric Thorner, conspired with the other defendants to defraud them by diverting their vehicle inventory to other dealerships and pocketing the proceeds. Defendant Jason Black, who allegedly aided Thorner, has moved to dismiss the claims against him for lack of personal jurisdiction. Black's motion will be denied. The plaintiffs have proffered evidence that Black, in his individual capacity, conspired with Thorner, a Massachusetts-based employee, to defraud two Massachusetts-based companies. On this record, the Court concludes that Massachusetts' long-arm statute reaches Black. It further concludes that Black has purposefully availed himself of the Massachusetts market by reaching out to conduct transactions with Thorner in that market, that the plaintiffs' claims arise out of or relate to Black's contacts with Massachusetts, and that the exercise of jurisdiction over Black would be fair and reasonable.

1

## BACKGROUND

The following facts are recounted as alleged in the complaint, supplemented with the evidence submitted in connection with the motion to dismiss. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

Plaintiff International Cars LTD, Inc., a Massachusetts corporation, is the parent company of plaintiff Honda North, a Honda dealership in Danvers, Massachusetts. ECF 1, ¶ 6. American Honda Motor Co., Inc., which is not a party to this case, is the manufacturer of Honda vehicles. *Id.* ¶ 11. It allocates a specific number of vehicles to Honda North and other dealerships over particular time periods. *Id.* ¶ 12; ECF 40-2, ¶ 7. Some of the vehicles allocated to Honda North are physically transported to the dealership, while others are allocated before they are built or given vehicle identification numbers ("VINs"). ECF 1, ¶¶ 13-14; ECF 40-2, ¶ 7. For this latter category of vehicles, American Honda uses a system called "APEX" that assigns a code to keep track of vehicles not yet given VINs. ECF 1, ¶ 14; ECF 40-2, ¶ 8. When market conditions permit, Honda dealerships, including Honda North, use third-party brokers to sell excess inventory allocated to them by American Honda to other Honda dealerships in need of cars. ECF 1, ¶¶ 15-16; ECF 40-2, ¶¶ 9-10.

Defendant Eric Thorner, a Massachusetts resident, worked for International Cars at Honda North from March 2011 to June 2023. ECF 1, ¶¶ 7-9, 11. Between 2015 and 2020, as part of his job, Thorner worked with third-party brokers, including defendant Jason Black, to manage International Cars' vehicle allocations. *Id.* ¶¶ 16-17; ECF 40-2, ¶ 10. During that time, Black was an employee of two Florida-based business entities: defendant Best Auto Finders, Inc. from July 2014 to May 2015 and defendant Supreme Locators, LLC from May 2015 to January 2020. ECF 1, ¶¶ 5-6, 18; ECF 53, ¶ 6. To move inventory allocations not wanted by International Cars, Black

would issue purchase orders to International Cars for vehicles it wished to transfer to other Honda dealerships. ECF 1, ¶ 20; ECF 40-2, ¶ 11. Representatives from International Cars and the buying dealership would sign the purchase orders, and American Honda or another transportation company would ship the vehicle to the buying dealership. ECF 1, ¶¶ 21-22; ECF 40-2, ¶ 11. The buying dealership would then pay Black a "locator fee" for brokering the transaction. ECF 1, ¶ 22; ECF 40-2, ¶ 11.

Between 2020 and 2023, the demand for vehicles outpaced supply, and Honda dealerships were effectively competing against each other for inventory from American Honda. ECF 1, ¶¶ 23-24; ECF 40-2, ¶ 12. The plaintiffs allege that between June 2022 and May 2023, Thorner, acting without authorization, diverted 250 vehicles allocated to International Cars in the APEX system to other Honda dealerships, with Black or the other corporate defendants acting as conduits. ECF 1, ¶¶ 25-27; ECF 40-2, ¶¶ 13-14. To accomplish this, Black issued purchase orders to Thorner, who did not sign them. ECF 1, ¶¶ 28-29; ECF 40-2, ¶¶ 14-15. Black then took the unsigned orders to other Honda dealerships, which would take shipment of the cars and pay Black. ECF 1, ¶¶ 30-31; ECF 40-2, ¶ 16. Thorner later received a payment from Black in return for the diverted vehicles. ECF 1, ¶ 34; ECF 40-2, ¶ 17. International Cars was not paid. ECF 1, ¶ 44.

International Cars discovered the alleged scheme in May 2023. *Id.* ¶ 40. When confronted, Thorner acknowledged his wrongdoing and resigned, effective June 9, 2023. *Id.* ¶ 41. Black allegedly knew that Thorner was not authorized to divert the inventory, because Thorner did not sign the purchase orders and no payments were made to International Cars for the diverted vehicles. *Id.* ¶ 44.

The plaintiffs filed this lawsuit in August 2023. Invoking this Court's federal question and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), they assert a violation of the

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, against all defendants (Count I); fraudulent concealment against Thorner (Count II); fraud against Thorner (Count III); breach of fiduciary duty against all defendants (Count IV); civil conspiracy against all defendants (Count V); conversion against all defendants (Count VI); tortious interference with prospective business relationships against all defendants (Count VII); and a violation of M.G.L. c. 93A, §§ 2 and 11 against Best Auto Finders, Supreme Locators, and the third corporate defendant, The Best Damn Locator, LLC (Count VIII). ECF 1, ¶¶ 47-129.

After extensive procedural skirmishing concerning service of process, Black moved to dismiss the claims against him for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[1] In connection with his motion, Black averred that he is a resident of Florida, has never resided in or traveled to Massachusetts, and has no property in Massachusetts. ECF 38-2, ¶¶ 4-5, 9, 12. He also averred that "[s]ince The Best Damn Locato[r], LLC was registered in the State of Florida in 2022, [he] ha[s] not individually transacted any business in Massachusetts or contracted to supply services or things in Massachusetts." *Id.* ¶ 8. Responding to the motion, the plaintiffs submitted evidence, uncontested by Black, that The Best Damn Locator was registered as a Florida limited liability company on October 31, 2022, with Black designated as the chief executive officer and registered agent. ECF 40-1, at 2-3. They also provided an affidavit from the Chief Financial Officer of International Cars and Honda North, as well as evidence of purchase orders signed by Black. ECF 40-2. Black, for his part, did not claim to be employed between January 2020, when he ceased working for Supreme Locators, and October 31, 2022, when The Best Damn Locator was formed. Nor did Black dispute, for purposes of the motion, that, in his

---

[1] Black also moved to dismiss the claims against him for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), but that portion of the motion became moot after Black acknowledged, in July 2024, that he had been properly served. *See* ECF 51.

individual capacity, he sent purchase orders and payments to Thorner in Massachusetts between June 2022 and October 30, 2022.

## STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a district court may use one of three methods to assess whether the plaintiffs have met their burden to establish personal jurisdiction: the prima facie method, the preponderance method, or the likelihood method. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016). The prima facie method, which the parties agree applies here, is the method "most commonly employed in the early stages of litigation." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997). Under that approach, the Court must ask whether the plaintiffs have proffered "evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins*, 825 F.3d at 34. It is not sufficient for the plaintiffs to "'rely on unsupported allegations in [their] pleadings.'" *A Corp.*, 812 F.3d at 58 (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)). They must "go beyond the pleadings and make affirmative proof." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024) (quotation marks omitted). The Court will give "credence to the plaintiff's version of genuinely contested facts," *Baskin-Robbins*, 825 F.3d at 34, and will consider the defendant's proffered facts "only to the extent that they are uncontradicted," *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007).

## DISCUSSION

The personal jurisdiction inquiry in a case, such as this, invoking the Court's federal question jurisdiction is different than in a case invoking its diversity jurisdiction.[2] The Due Process Clause of the Fifth Amendment, rather than the Due Process Clause of the Fourteenth Amendment, sets the limits of personal jurisdiction in a federal question case. *See Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) ("*Swiss II*"). Under the Fifth Amendment, unlike the Fourteenth, "a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." *Swiss II*, 274 F.3d at 618; *see United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992). "At the same time, however, the plaintiff must still ground its service of process in a federal statute or civil rule." *Swiss II*, 274 F.3d at 618.

The applicable rule here is Federal Rule of Civil Procedure 4(k)(1). Under that rule, service of process or the filing of a waiver of service "establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; (B) who is a party joined under [Federal Rules of Civil Procedure] 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or (C) when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1).

---

[2] This Court does not have diversity jurisdiction because each of the plaintiffs and defendant Thorner are residents of Massachusetts. Federal question jurisdiction is premised on the plaintiffs' claim under the Computer Fraud and Abuse Act. Black does not dispute that the complaint plausibly alleges a claim against him under the CFAA, on the theory that he was a co-conspirator or aider and abettor of Thorner's knowing or intentional access of a protected computer without authorization, or in excess of authorization, in furtherance of conduct intended to defraud, causing the plaintiffs damage and loss. *See* ECF 1, ¶¶ 54-56 (citing *Enargy Power Co. Ltd. v. Wang*, No. 13-cv-11348-DJC, 2013 WL 6234625, at *3 (D. Mass. Dec. 3, 2013)); 18 U.S.C. §§ 1030(a)(2)(C), (a)(4), (g).

Subsections (B) and (C) of the rule are not applicable, as Black was served in Florida, more than 100 miles from the District of Massachusetts, and was not joined under Rule 14 or 19; and the CFAA does not authorize nationwide service of process. *See generally* 18 U.S.C. § 1030. Under subsection (A), this Court may exercise personal jurisdiction over Black only if he is subject to the jurisdiction of a general-jurisdiction court in Massachusetts. Accordingly, even though this is a federal question case, the Court must look to Massachusetts law to determine whether it may exercise personal jurisdiction over Black. *See Baskin-Robbins*, 825 F.3d at 34 n.2 (under Rule 4(k)(1)(A), a federal court "'does not treat federal question cases differently than cases where a federal court adjudicates state-created rights based on diversity of citizenship jurisdiction'" (quoting 4 C. Wright et al., *Federal Practice and Procedure* § 1068.1, at 691 (4th ed. 2015))); *163 Pleasant Street*, 960 F.2d at 1086 (similar).

In Massachusetts, the plaintiff must show that a court's exercise of jurisdiction over the defendant meets the requirements of the Commonwealth's long-arm statute, M.G.L. c. 223A, § 3, and the constitutional minimum demanded by due process—that is, the defendant must have "'certain minimum contacts with [Massachusetts] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Rosenthal*, 101 F.4th at 95 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The plaintiffs here contend that this Court has specific, not general, jurisdiction over Black because he purposefully availed himself of the Massachusetts market through his transactions with Thorner, and because their claims arise out of or relate to Black's contacts with Massachusetts. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-60 (2021) (discussing the difference between general and specific jurisdiction). Because the Massachusetts long-arm statute is not coterminous with due process limits on personal jurisdiction, the Court will analyze in turn whether the plaintiffs have

demonstrated that Black's conduct satisfies the statute and the strictures of due process. *See Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203, 209 (1st Cir. 2023); *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 n.9 (2017) ("[W]e take this opportunity to clarify that . . . the long-arm statute's reach is not coextensive with what due process allows.").

## I.    <u>The Massachusetts Long-Arm Statute.</u>

The Massachusetts long-arm statute authorizes, as relevant here, a court to exercise personal jurisdiction over a defendant who acts "as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in th[e] commonwealth; [or] (d) causing tortious injury in th[e] commonwealth by an act or omission outside th[e] commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in th[e] commonwealth." M.G.L. c. 223A, §§ 3(c), (d).[3] The statute must be "generously construed in favor of asserting personal jurisdiction," with the court applying a but-for causation inquiry that asks whether the "defendant's contacts with the Commonwealth constitute[d] 'the first step in a train of events that result[ed] in the personal injury.'" *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 114 (1st Cir. 1997) (quoting *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 770 (1994)); *accord Doucet v. FCA US LLC*, 492 Mass. 204, 207-10 (2023).

The plaintiffs assert that Black's conduct falls within Section 3(c) of the statute, which covers individuals who "caus[e] tortious injury by an act or omission in th[e] commonwealth." M.G.L. c. 223A, § 3(c). To fall within this provision, the act or omission need not necessarily have

---

[3] The plaintiffs do not contend that Black's conduct falls within Section 3(a) of the long-arm statute, which authorizes the court to exercise personal jurisdiction arising from a party's "transacting any business in th[e] commonwealth." M.G.L. c. 223A, § 3(a). The Court will not, therefore, consider whether Black's contacts with Massachusetts satisfy that statutory provision.

occurred in Massachusetts. Rather, as the First Circuit has explained, "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972); *see also Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 982 (1st Cir. 1986) (sending fraudulent offer to Massachusetts company is enough to satisfy Section 3(c)); *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079, 1084 (1st Cir. 1973) (similar); *Burtner v. Burnham*, 13 Mass. App. Ct. 158, 160, 163-64 (1982) (similar). The plaintiffs have proffered evidence that, using electronic communications, Black sent purchase orders into Massachusetts as part of a fraudulent scheme with Thorner to divert cars that were allocated to the plaintiffs—Massachusetts-based businesses—to other dealerships. They have proffered evidence that Black sent payment to Thorner in Massachusetts in exchange for the diverted vehicles. And they have proffered evidence that Black and Thorner's fraud, if proven, caused them harm and financial loss in Massachusetts. This evidence is sufficient, at this stage, to establish for jurisdictional purposes that Black's actions inflicted tortious injury in the Commonwealth under Section 3(c). The long-arm statute's causation standard is likewise met here: Black's coordinated conduct with Thorner started a "train of events" that led vehicles to be diverted from the plaintiffs' car lots to other Honda dealerships, resulting in financial harm to their Massachusetts-based businesses. *Tatro*, 416 Mass. at 770.

Black argues that he never interacted *as an individual* with Thorner and therefore cannot be responsible in his individual capacity for tortious acts in Massachusetts. The plaintiffs have submitted evidence, however, that Black's current limited liability company, The Best Damn Locator, was formed on October 31, 2022—some five months after the alleged scheme commenced in June 2022. Black was not employed by Best Auto Finders or Supreme Locators

after January 2020, and he has submitted no evidence that he worked for any other employer between January 2020 and October 31, 2022. Black does state in his affidavit that he has never committed a tortious act in Massachusetts, nor has he committed a tortious act that has caused harm in Massachusetts. *See* ECF 38-2, ¶¶ 6-7. But because the Court must give "credence to the plaintiff's version of genuinely contested facts" on prima facie review of Black's motion, and the plaintiffs have submitted evidence that contradicts Black's assertion, it cannot credit this testimony. *Baskin-Robbins*, 825 F.3d at 34. At this stage in the proceedings, the record adequately supports the plaintiffs' position that from at least June 2022 to October 30, 2022, Black, in his individual capacity, sent fraudulent purchase orders and payments to Thorner in Massachusetts as part of a scheme to divert vehicles to other Honda dealerships for personal financial gain. That evidence is sufficient to bring Black within the scope of Section 3(c) of the long-arm statute.[4]

## II.   <u>Due Process Requirements.</u>

Having established jurisdiction under Massachusetts' long-arm statute, the plaintiffs must also demonstrate that the exercise of personal jurisdiction over Black comports with due process. "Due process dictates that a court may only assert its power over an out-of-forum defendant if the party has 'such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.'" *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024) (quoting *Ford Motor Co.*, 592 U.S. at 358). The due process inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co.*, 592 U.S. at 358

---

[4] Because Black, as an individual, is subject to Section 3(c) of the Massachusetts long-arm statute, the Court need not consider whether Black's conduct falls within Section 3(d) as well.

(quoting *Bristol-Myers Squibb Co. v. Super. Ct. of California, S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

In a specific personal jurisdiction case, like this one, the exercise of jurisdiction over the defendant satisfies due process if the plaintiffs can "show that (1) [their] claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer*, 905 F.3d at 7. This test "is flexible and fact-specific, written more in shades of grey than in black and white." *Rosenthal*, 101 F.4th at 95 (internal citations omitted).

**Relatedness.** The plaintiffs have established that their claims arise out of or relate to Black's activities in Massachusetts. To demonstrate relatedness for tort claims, the plaintiffs "must show a nexus between [their] claim[s] and [Black's] forum-based activities." *Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 245 (1st Cir. 2023) (quotation marks omitted). Even though this inquiry does not require "proof that the plaintiff's claim came about because of the defendant's in-state conduct," *Ford Motor Co.*, 592 U.S. at 362, that standard is nonetheless met here. The plaintiffs' evidence demonstrates that Black transmitted purchase orders to Thorner in Massachusetts, whereupon Thorner returned the purchase orders unsigned, and cars allocated to the plaintiffs in Massachusetts were diverted to other dealerships. As discussed, this conduct, if later proven, would constitute a but-for cause of the plaintiffs' injuries. Based on this alleged scheme, the plaintiffs have asserted state law tort claims and a federal CFAA claim that arise out of and relate to Black's conduct. There is, on these facts, "a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id.* at 365 (quoting *Helicopteros*

11

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Black's sole counterargument on the relatedness inquiry is, again, that he never interacted with people or entities in Massachusetts in his individual capacity. For the reasons already discussed, that argument is unavailing, as the plaintiffs have submitted evidence that he engaged in the scheme in his individual capacity from June 2022 to October 2022.

**Purposeful Availment.** The plaintiffs have likewise established that Black purposefully availed himself of the Massachusetts market. To meet that requirement, they must identify "'some act by which [Black] purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Rosenthal*, 101 F.4th at 96 (quoting *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010)). The inquiry focuses on the voluntariness of Black's actions—that is, whether Black's contacts with Massachusetts resulted from his own actions—and the foreseeability that his connection with Massachusetts might cause him to be haled into the Commonwealth's courts. *See id.*

Here, Black's choice to direct allegedly fraudulent purchase orders to Thorner in Massachusetts and to make payments to Thorner in Massachusetts, thus causing the plaintiffs' scarce allocations of Honda vehicles to be diverted from Massachusetts, amounts to a purposeful availment of the privilege of conducting business in Massachusetts. Black deliberately targeted contacts within Massachusetts, and a reasonable person in his shoes would anticipate that this conduct could augur a lawsuit in Massachusetts. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (California court had personal jurisdiction over Florida defendants where "their intentional, and allegedly tortious, actions were expressly aimed at California," they "knew that the brunt of th[e] injury would be felt" in California, and they could "reasonably anticipate being haled into court" in California (quotation marks omitted)). Black's contacts with Massachusetts were not, seen

through any lens, "random, isolated, or fortuitous." *Baskin-Robbins*, 825 F.3d at 36 (quotation marks omitted). Once again, Black's sole counterargument is that he did not purposefully avail himself of the Massachusetts market in his individual capacity, rather than as an employee of The Best Damn Locator. In light of the plaintiffs' contrary evidence, his argument fares no better when reasserted in this context.

**Reasonableness.** The final element is whether the exercise of jurisdiction over Black would be fair and reasonable. That inquiry requires consideration of the following factors: "'(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.'" *Id.* at 40 (quoting *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 69 (1st Cir. 2014)). Courts employ a "sliding scale" approach, with the importance of this multi-factorial reasonableness inquiry varying with the strength of the plaintiff's showing on the relatedness and purposeful availment inquiries. *Id.* In all events, the purpose of applying these factors is "to aid the court in achieving substantial justice." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).

Limiting his argument to the first factor, Black contends that subjecting him to jurisdiction in Massachusetts would be burdensome because he does not live in Massachusetts, own property in Massachusetts, or currently conduct business in Massachusetts in his individual capacity. The First Circuit has recognized that because "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction," a defendant "must demonstrate that 'exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" *Id.* at 718 (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)). Black has not made

that showing; his arguments regarding the burden of appearing in Massachusetts would apply to most any non-resident defendant, and he offers no argument that litigating in Massachusetts would amount to an unusual or especially onerous obstacle. *See Pritzker*, 42 F.3d at 64 (modern travel "creates no especially ponderous burden for business travelers").

The remaining factors favor the exercise of jurisdiction. Massachusetts "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). With respect to the third factor, some deference is owed to the plaintiffs' choice of forum, *see Baskin-Robbins*, 825 F.3d at 41, and it would be most convenient for the parties to litigate this matter in Massachusetts, where both plaintiffs and defendant Thorner reside. The fourth factor, concerning judicial efficiency, counsels against bifurcation of this case between this forum and another forum. The Court will adjudicate the plaintiffs' claims against the remaining defendants, including Black's LLC, The Best Damn Locator, which has not objected to this Court's exercise of jurisdiction. Parallel litigation in these circumstances, the First Circuit has cautioned, "would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes." *Pritzker*, 42 F.3d at 64. Neither party addresses the fifth factor, concerning the states' interest in promoting substantive social policies. Assuming that factor weighs in favor of neither party, the plaintiffs have nevertheless met their burden to show that subjecting Black to litigation in this forum comports with traditional notions of fair play and substantial justice. The Court concludes, accordingly, that the exercise of jurisdiction over Black would not offend due process.

14

## CONCLUSION AND ORDER

For the foregoing reasons, Black's motion to dismiss for lack of personal jurisdiction, ECF 38, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: November 6, 2024